Jesse Lee Boland v. Commissioner.
Boland v. Commissioner
Docket No. 81405.
United States Tax Court
T.C. Memo 1960-199; 1960 Tax Ct. Memo LEXIS 92; 19 T.C.M. (CCH) 1030; T.C.M. (RIA) 60199; September 27, 1960
W. Jerry Roberts, Esq., for the petitioner. W. Ralph Musgrove, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in income tax of $9,195.89 for the calendar year 1956 and $1,070.16 for the calendar *93 year 1957. The issues presented for decision are: (1) what was the petitioner's basis in certain real property which he sold in 1956, (2) whether the adjusted gross income reported by the petitioner on his 1956 return included rental income, (3) whether the petitioner is entitled to certain of the exemptions claimed for 1956 and 1957, and (4) whether amounts expended in connection with rental property in 1957 were deductible as expenses or should be capitalized. Findings of Fact The facts stipulated are incorporated herein by reference. The petitioner, Jesse Lee Boland, is an individual residing at Richmond, Virginia. He filed separate individual income tax returns for the years 1956 and 1957 with the director of internal revenue at Richmond, Virginia. Petitioner lectures on astrology using the trade name "Master X" and renders services as an advisor in regard to marriage and family problems. He is also an experienced air pilot. Part of petitioner's income for the years 1956 and 1957 was derived from palm reading and the selling of oils or ointments with which to anoint oneself. He also sold rocks and ornaments, which he selected, to persons whom he felt would be benefited *94 thereby from a psychological or physiological point of view. In 1956, the petitioner sold a tract of land containing 181 acres, more or less, situated near Glen Allen, Hanover County, Virginia. The property, hereinafter referred to as the Hanover property, was purchased by the petitioner in May 1944, at a cost of $12,522.27. It was sold in May 1956 for $50,000. The Hanover property was acquired by the petitioner to develop an airport and suburban shopping center. No work was ever begun on the shopping center, but some work was done on the airport. Between 35 and 40 acres of forest land were cleared, graded and leveled in order to install a runway. In the process of this clearing, grading and leveling, the petitioner purchased numerous pieces of equipment. A tractor to pull stumps was obtained. He purchased from a second-hand dealer in heavy equipment a heavy duty pump, 2 or 3 tractors, a bulldozer, 2 dirt movers, a dirt buggy, a disc plow, a pneumatic saw, a revolving crane, 1 or 2 trailers and a scarifier. Hauling costs were paid to move this equipment to the Hanover property. Also a large road grader was purchased, and a chain saw was acquired. Moneys were expended to repair *95 the equipment and for fuels, gasoline and oil to operate it. As part of the renovation project a contractor was engaged. He converted a barn into a hangar, repaired the fences and installed a septic system. The electrical system of a stable located on the land was altered, and a roadway on the property was improved. Petitioner built a second hangar which could accommodate from 3 to 4 planes. The roof of the hangar consisted of sheet metal. Lumber used in the building of the hangar as well as lumber used in the renovation of the house and barn was purchased. The labor on the project was provided by the petitioner's family and boys from the nearby Hanover Industrial School. The only compensation to these boys was their board while working for the petitioner. Work progressed to the extent that the cleared area could be utilized as a runway. In 1950, the VirginiaElectric Power Company instituted condemnation proceedings against the petitioner to obtain a right-of-way across the Hanover property for an electric power line. The ensuing litigation resulted in an award of $1,224.50 to the petitioner, from which he paid attorney fees and other costs. The right-of-way was located across *96 the end of the runway, which rendered the runway completely useless and the project for which the land had been acquired was abandoned. As a result of vandalism occurring in 1955, the records of the purchases and expenditures in connection with the project were lost or destroyed. Because it had deteriorated from heavy use, the equipment became completely inoperative. A few parts of this equipment still remain on the property, but the greater portion was carried away by thieves. In the summer of 1956 petitioner's daughter, Verdia, and her two children, Lithia and Mario, came to live with the petitioner. He was the sole means of their support for the remainder of 1956 and until February 1957 when they departed. Petitioner's wife also left in February 1957, taking with her their younger daughter, Patricia. At the time of her departure she appropriated some of the petitioner's money. In 1956, petitioner purchased for $45,000 property on First Street in Richmond, Virginia, hereinafter referred to as the First Street property. It consisted of a building containing 8 storerooms on the first floor and an auditorium on the second floor. He made a $15,000 down payment which was a portion *97 of the proceeds from the sale of the Hanover property. In October 1956, petitioner was informed by the building inspector for the City of Richmond that a crack had been discovered in the wall on the alley side of the building which was a hazard to any one using the alley and that he should commence work immediately to make the wall safe. In complying with the order, petitioner had certain work done to restore the building to a safe condition. Steel rods were used to shore up the walls, new beams were inserted under the roof to provide added support and the foundation was reinforced with cinder blocks. Parts of the roof were also repaired. The petitioner filed a return for 1956 on Form 1040A stating a total income of $3,500. Attached thereto was a Schedule D, Form 1040, reporting a sale of real estate at a loss of $11,000 and a separate Schedule G, Form 1040, Income from Rents, reporting total rents of $2,400 and claiming deductions for real estate taxes, $592.68, interest on mortgage, $1,500, and insurance premiums $852 (for 3 years). The gross rents actually received by the petitioner amounted to $2,486.05. His actual expenses allowable as deductions were commissions, $148.98, *98 taxes, $362.44 and depreciation, $520.84. The gross rental income was included in the total income of $3,500 reported on Form 1040A. On his 1956 income tax return the petitioner claimed exemptions for his wife, his son, two daughters and two grandchildren and on his 1957 return, for his wife and one daughter, Patricia. On his 1957 return, Schedule C, Profit (Or Loss) from Business or Profession, petitioner reported income as a "trading-advisor" in the amount of $4,500. He claimed deductions for expenses in the amount of $4,793 which consisted of $1,000 cost of labor, $1,900 truck expense, $1,000 gasoline and oil, $33 license, $300 telephone, $60 electric, and $500 maintenance. In 1957, the petitioner received gross rental income of $3,085. He incurred deductible expenses in the amounts of $177.10 for commissions, $1,500 for interest, and $892.86 for depreciation. The petitioner's basis in the Hanover property at the time of its sale was $22,000. The petitioner provided the chief support for his wife, his son and his younger daughter in 1956. He did not provide the chief support for his elder daughter or grandchildren in 1956 or for any member of his family in 1957. The *99 petitioner's expenditures in repairing the building in Richmond and making its wall safe served to prolong its life and had a benefit to the property for a period exceeding one year. Opinion It is stipulated that the petitioner purchased the Hanover property in 1944 for $12,522.27 and sold it in 1956 for $50,000. The petitioner reported on his 1956 return that the property was sold at a loss of $11,000. The respondent determined that long-term capital gain was realized in the amount of $38,702.23 of which 50 per cent should be added to income. The petitioner alleges that he spent in excess of $51,968 in capital betterments and improvements to the property which, he contends, should be included in his basis, resulting in a loss. The petitioner failed to produce books and records to substantiate these expenditures. He explained that his premises were broken into and his records were taken. He testified at length and in some detail as to the work done on the premises and the costs. His testimony was supported to some extent by a disinterested witness who had sold him substantial amounts of used machines for use in the work. This witness estimated the cost of such equipment to petitioner *100 as between $8,000 and $15,000. The petitioner says that he undertook to build an airstrip on the property and procured machinery for use in clearing, grading and leveling a part of the property for this purpose. A witness, who was a real estate appraiser, testified that from an examination of the property in 1959 some 35 to 40 acres had apparently been cleared, graded and leveled as stated by the petitioner and that it could have been accomplished only by the utilization of substantial amounts of labor, equipment and materials. He stated also that a number of buildings on the premises appeared to have been either repaired or completely renovated during the tenancy of the petitioner. We have shown in our findings of fact the items of equipment which the petitioner procured and used as stated in his testimony and that of the witness who sold most of it to him. The petitioner alleges the following costs: $22,208 for equipment, $385 paid to contractors for beginning the work, paid for remodelling $7,000, for lumber $4,000, for roofing and sheet metal $1,725, for installing a power line $1,350, for fuels, gasoline and oils used on the job, $12,000, for repairs to equipment, welding *101 material, tools and other items $3,000, and for transporting equipment to the job $300. He alleges that the equipment had no salvage value at the end of the work and contends that all the above amounts should be included in his basis for the property in determining gain or loss. The respondent would deny the addition to basis of any amount, contending that there is no adequate proof of any of these figures, that it is impossible to allocate the alleged expenses between depreciable and nondepreciable assets as the premises were used both for residence purposes and in petitioner's salvage business. The respondent in determining basis deducted the entire condemnation award of $1,224.50 whereas the petitioner says that he was required to pay legal fees and court costs out of that amount. He provides no evidence other than his own uncorroborated testimony to show the amount of such costs. While the petitioner's records for the period 1944 to 1950, when these expenditures were made, have been lost, we note that his records for 1957 in connection with other issues herein are far from adequate to prove his expenditures in that year. Notwithstanding the unsatisfactory proof of amounts, *102 we are convinced by the evidence that the petitioner did invest substantial amounts in making permanent improvements in the property and that some addition to his original cost basis should be made. Under the rule of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930) we have redetermined the petitioner's basis and find it to be $22,000. The petitioner filed his 1956 return on Form 1040A, reporting $3,500 as total income. Submitted with this form was a Schedule D. Form 1040 reporting a loss on the sale of the Hanover property, and a Schedule G. Form 1040, Income From Rents, reporting the amount of $2,400 as total rents received during the year. He claimed deductions of $592.68 as real estate taxes, $1,500 as mortgage interest, and $852 as insurance premiums. Line 3 which was to designate the net amount contained no entry. The respondent determined that the petitioner received gross rental income of $2,486.05 in 1956, had allowable deductions of $1,032.26 and net rental income of $1,453.79. Petitioner accepts this recomputation as correct. The issue involved is whether the $1,453.79 should be added to the $3,500 as the respondent contends or whether the $3,500 reported *103 as total income included the rental income as the petitioner maintains. Respondent argues that because the amount of deductions claimed on the return exceeds the rental income by $544.68, there is no net rental income to carry over to the Form 1040A and therefore the $3,500 shown on the Form 1040A could not contain any portion of the rental income. Petitioner, however, testified that the reported amount of $3,500 was derived primarily from rents. The petitioner used the wrong forms in filing a Form 1040A together with a separate Schedule D of Form 1040 and a separate Schedule G. See Regs. sec. 1.3-1. He was ignorant of the proper method of reporting income. We conclude that his reported income of $3,500 included the gross rental income prior to the allowable deductions. In recomputing the tax for 1956 the $3,500 should be reduced by the deductions allowed by the respondent from rental income and increased by the taxable gain, if any, from the sale of the Hanover property. The respondent disallowed exemptions claimed by the petitioner in 1956 for his elder daughter, Verdia, and her two children and in 1957 for his wife and his younger daughter, Patricia. The petitioner testified *104 that he had provided the sole means of support for Verdia and the children for more than one-half of 1956. He did not state or prove the monetary value of this support, nor did he show the total cost of support of these persons for the year. The testimony of his son, Michael, did not supply this essential information. The petitioner admitted that his wife and daughter, Patricia, left him in February of 1957, and bases his claim for exemptions on their account for 1957 upon the statement that his wife appropriated $4,300 of his money and that since she was unskilled and had no other source of income this amount must have exceeded one-half the total cost of support of these two persons. A taxpayer may claim the exemption for a dependent if he has provided over half of the support of the individual for the taxable year, section 152, Internal Revenue Code of 1954.[1] This requirement has reference to the monetary value or amount of support afforded during the taxable year, not merely the duration of the support. The taxpayer has the burden of establishing two requisites, first, the amount of support he provided and, second, the total support from all sources. *105 Bernard C. Rivers, 33 T.C. 935. Concerning the exemptions reported in 1956 for Verdia and her two children, the petitioner did not indicate the amount he furnished nor the total amount. As to the 1957 exemption for his daughter, Patricia, he did allege the amount he provided for her and her mother but did not fulfill the second requirement of showing the total cost. There has been no substantiation of the statement that the petitioner's wife took $4,300 in 1957, but even if we accepted this as a fact, the proof of the total cost of support is lacking. In Bernard C. Rivers, supra, we said "The burden is upon him [petitioner] to establish clearly his right to the dependency exemptions. No factor relating to his right to such exemptions is here disputed except the crucial factor which is the total amount expended from all sources for the support * * * during the year. In the Cohan case there was no dispute concerning the taxpayer's right to take the expense deduction there sought. The only issue was with respect to the amount of that deduction, the court having determined that expenses had in fact been incurred by the taxpayer. Here, the right to the exemption *106 is itself at issue. The right to the exemption is contingent upon the total amount of expenditure for the support * * *. Cohan does not authorize or require a conjecture by this Court as to that total amount. * * *" In regard to the petitioner's claim of an exemption in 1957 on account of his wife, the petitioner, who filed a separate return, must prove that his wife had no gross income during the taxable year. Section 151, Internal Revenue Code of 1954; [2]Theodore Wesley Graske, 20 T.C. 418 (1953). This has not been proved. The petitioner has not heard from his wife since she left him and has no knowledge of her subsequent earnings. The petitioner has not proved his right to the exemptions claimed. The respondent concedes *107 those exemptions shown in our findings of fact as allowable. In 1957, the petitioner claimed deductions of $4,793 consisting of $1,000 for labor, $1,900 for trucks, $1,000 for gasoline and oil, $33 for license, $300 for telephone, $60 for electric, and $500 for maintenance. The only proof offered by the petitioner in support of these deductions was receipts totaling $111.68 which represented repairs to the First Street property made pursuant to an order of the building inspector. The petitioner testified that the expenses were incurred in putting this property in safe condition and consisted of shoring the walls with steel *108 rods, the insertion of new beams to support the roof, repairing portions of the roof, and underpinning the foundation with cinder blocks. In a similar case, Home News Publishing Co., 18 B.T.A. 1008 (1930), a building inspector ascertained that the building was unsafe for habitation and that certain alterations to the girders and flooring would have to be made in order to make the building safe for occupancy. We held "that all the work for which the expenditures were made was pursuant to a general plan of reconditioning and improving and altering the property as a whole to make it suitable for the petitioner's purposes. As such we think the expenditures were of a capital nature and not deductible as an expense. See H. S. Ccroker Co., 15 B.T.A. 175; Foer Wall Paper Co., 9 B.T.A. 377. "While certain portions of the work done may, standing alone, have properly been classified as repairs, all the work was a part of the same general scheme, and we do not believe under the facts that certain particular items should be separated and classified as repairs. I. M. Cowell, 18 B.T.A. 997." See also Jones v. Commissioner, 242 F.2d 616 *109 (C.A. 6, 1957); Stoeltzing v. Commissioner, 266 F. 2d 374 (C.A. 3, 1959) affirming a Memorandum Opinion of this Court. The work done as described by the petitioner clearly was of a capital nature. Section 263, Internal Revenue Code of 1954. [3] The disallowance of these deductions must be sustained. Decision will be entered under Rule 50. Footnotes
1. SEC. 152. DEPENDENT DEFINED. (a) General Definition. - For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) as received from the taxpayer): (1) A son or daughter of the taxpayer, or a descendant of either, * * *↩
2. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions. - In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. (b) Taxpayer and Spouse. - An exemption of $600 for the taxpayer; and an additional exemption of $600 for the spouse of the taxpayer if a separate return is made by the taxpayer, and if the spouse for the calendar year in which the taxable year of the taxpayer begins, has no gross income and is not the dependent of another taxpayer.↩
3. SEC. 263. CAPITAL EXPENDITURES. (a) General Rule. - No deduction shall be allowed for - (1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * * (2) Any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made.↩